UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| C.L. "BUTCH" OTTER, in his official capacity as Governor of the State of Idaho, *et al.*,<br><br>　　Plaintiffs,<br>v.<br><br>S.M.R. JEWELL, in her official capacity as Secretary of the United States Department of the Interior, *et al.*,<br><br>　　Federal Defendants, and<br><br>THE WILDERNESS SOCIETY, 1615 M Street NW, Washington, DC 20036; NATIONAL AUDUBON SOCIETY, 225 Varick St., New York, NY 10014; NATIONAL WILDLIFE FEDERATION, 11100 Wildlife Center Dr., Reston, VA 20190; and EARTHWORKS, 1612 K St., NW, Suite 808, Washington, D.C., 20006,<br><br>　　Applicants in Intervention/ Defendants. | **Case No. 1:15-cv-01566-EGS** |

### MOTION TO INTERVENE BY THE WILDERNESS SOCIETY, NATIONAL AUDUBON SOCIETY, NATIONAL WILDLIFE FEDERATION, AND EARTHWORKS, AND MEMORANDUM IN SUPPORT

　　Four nonprofit conservation organizations, The Wilderness Society, National Audubon Society, National Wildlife Federation, and Earthworks ("Conservation Groups"), now move for intervention as of right on behalf of the Federal Defendants, pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, they move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

MOTION/MEMO TO INTERVENE   - 1 -

Counsel for the Conservation Groups has contacted counsel for the Plaintiffs and the Federal Defendants. The Federal Defendants have stated that they do not oppose this motion as long as the Conservation Groups agree not to file any new claims in the litigation and not to file any motions challenging the scope or content of the administrative record, limitations to which the Conservation Groups hereby agree. The Plaintiffs have stated that they reserve their position until they have reviewed this motion. The Conservation Groups have lodged a proposed Answer with this motion, which should be filed by the Clerk if the Court grants this motion.

Because each applicant meets the four requirements for intervention as of right as defendants under Fed. R. Civ. P. 24(a) or, alternatively, the broad standard for permissive intervention under Rule 24(b), and have standing, applicants respectfully request the Court for leave to intervene as defendants in this case.

## ARGUMENT

### I.   APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT

The Federal Rules of Civil Procedure provide the following:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). This Court uses a four-part test to evaluate motions to intervene: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate

representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Practical considerations guide courts in applying this test. *See* Fed. R. Civ. P. 24, advisory committee's note. "[T]he D.C. Circuit has taken a liberal approach to intervention," *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000). In the present case, applicants satisfy each of the elements for intervention under Rule 24(a).

A.   **Applicants' Motion for Intervention Is Timely**

In determining whether an intervention motion is timely, this Court should consider "'all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'" *United States v. British American Tobacco Australia Serv.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Applicants' motion to intervene is timely because the present case is in its early stages. The Court has ordered that the Federal Defendants produce the administrative record by January 22, 2016, with Plaintiffs' summary judgment due February 22, 2016, and Defendants' cross-motion and response due March 23, 2016, and granting this motion will not delay that schedule. *See* Minute Order of 11/16/15; *Hardin v. Jackson*, 600 F. Supp. 2d 13, 14-16 (D. D.C. 2009) (intervention timely when filed motion filed on same day as defendant's response to motion for summary judgment). "[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair

detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).  Because granting the Conservation Groups' motion to intervene will not delay the course of this litigation nor prejudice any party in the case, this motion to intervene is timely.

      B.      **Applicants Have an Interest in the Subject Matter of This Action**

Rule 24(a) requires an applicant for intervention to possess an interest relating to the property or transaction that is the subject matter of the litigation. This "interest test" is not a rigid standard; rather, it is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *see also Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 69 (D.D.C. 2006).  Indeed, a proposed intervenor need not have a specific legal or equitable interest in jeopardy but need only show a "protectable interest of sufficient magnitude to warrant inclusion in the action."  *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981); *see also Friends of Animals*, 452 F. Supp. 2d at 69 ("[P]roposed intervenors of right 'need only an interest in the litigation—not a cause of action or permission to sue.'") (citation omitted). In particular, "a public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported.*" Idaho Farm Bureau Fed'n. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of the Interior*, 100 F.3d 837, 846 (10th Cir.1996) ("primary advocate" of Mexican spotted owl during the listing

MOTION/MEMO TO INTERVENE   - 4 -

process had sufficient interest to intervene in a challenge to that listing); *Natural Res. Defense Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (granting intervention as of right to industry groups in a case that could "nullify" the group's efforts).

Plaintiffs in this case challenge Record of Decision and Approved Land Management Plan Amendments for the Great Basin Region Greater Sage-Grouse Sub-Regions of Idaho and Southwestern Montana, Nevada and Utah, 80 Fed. Reg. 57,333 (Sept. 23, 2015); and Record of Decision and Approved Resource Management Plan Amendments for the Great Basin Region Greater Sage-Grouse Sub-Regions of Idaho and Southwestern Montana, Nevada and Northeastern California, Oregon, and Utah, 80 Fed. Reg. 57,633 (Sept. 24, 2015), particularly their application in Idaho. Complaint ¶ 2. Here, each Conservation Group has a keen interest in the challenged plans that protect sage grouse and the lands that they require for survival, including in Idaho, and have specifically advocated to get these plans in place.

Craig Gerhke is the Director of the Idaho office for The Wilderness Society ("TWS"). Int. Exh. 1 ¶ 2. As he states, "TWS has been actively engaged in the federal planning efforts for conservation of the greater sage-grouse since their inception, including: a. TWS submitted scoping comments in April, 2012, when the federal planning efforts formally commenced. b. TWS commented on the draft plans in 2013 and 2014. c. TWS submitted additional comments and administrative protests on the proposed plans in 2015. d. TWS members, responding to wild alerts,

have submitted thousands of comments on the federal plans and also urged Congress to support the completion and implementation of these plans." *Id.* ¶ 18.

"TWS has a long-standing interest in the management of Bureau of Land Management (BLM) and Forest Service lands in Idaho and engages frequently in the decision-making process for land use planning and project proposals that could potentially affect wilderness-quality lands, wildlife habitat, and other natural resources managed by the BLM and Forest Service." *Id.* ¶ 3. "TWS is a leader in efforts to designate lands in Idaho as wilderness under the National Wilderness Preservation System. In 2009 these efforts led to the designation of 519,000 acres of wilderness in Idaho's Owyhee Canyonlands in Owyhee County, and in 2015, 275,000 acres of wilderness in Idaho's Boulder-White Clouds in Custer and Blaine County." *Id.* ¶ 4.

Brian Rutledge is the Vice President, Conservation and Policy Advisor Central Flyway for National Audubon Society. Int. Exh. 2 ¶ 3. "For the past decade Audubon has worked with a wide range of stakeholders to ensure the long-term survival of the sage-grouse. The organization's chapters have coordinated efforts with federal, state, and local governments, as well as private landowners, including ranchers." *Id.* ¶ 8. Like TWS, Audubon submitted comments on the challenged plan as part of this work. *Id.* ¶ 13.

"[T]he National Audubon Society's members have invested significant time, effort and resources into the long-term survival of the Greater Sage-grouse throughout the West, including in Idaho. Audubon has been working for decades to

preserve the greater sage-grouse and its habitat through numerous local, state and federal processes. Audubon and its members participated at every stage of the federal government's planning process for the Approved Resource Management Plan Amendments for the Great Basin Region (which includes Idaho[)]. Audubon— as an organization and on behalf of its individual members — has a substantial interest in the outcome of this legal challenge to the United States' authority to preserve the Greater Sage-grouse habitat in the Great Basin of Idaho." *Id.* ¶ 19.

Tom France is Senior Director for Western Wildlife Conservation in National Wildlife Federation's ("NWF") Northern Rockies and Pacific Regional Center.  Int. Exh. 4 ¶ 3.  "During the preparation of these [challenged] land use plans, NWF has provided extensive comments to BLM and USFS in support of science-based strategies to conserve sustainable greater sage-grouse populations including the designation and preservation of priority or core habitat areas as well as specific protections for breeding, brooding and wintering areas. * * * At NWF's Annual Meeting in March 2015, its affiliates adopted a specific resolution in support of these efforts by BLM and USFS." *Id.* ¶¶ 9, 11.

"For nearly 80 years, NWF has been advocating for the conservation of vital resources upon which wildlife like the greater sage-grouse depend." *Id.* ¶ 6.  "As part of its mission to preserve and strengthen protection for wildlife and wild places, NWF has actively worked on behalf of its members to ensure conservation of America's sagebrush steppe. This iconic Western landscape provides habitat for more than 350 species, including the greater sage-grouse, pronghorn, mule deer and golden eagles. Many of these species are declining. Greater sage-grouse have lost more than half of their native habitat and their numbers have plummeted from an estimated 16 million to less than 500,000. Among NWF's activities relating to

greater sage-grouse, NWF has worked to secure effective provisions in land use planning documents, mineral leases, drilling and mining permits issued by both federal and state agencies." *Id.* ¶ 7.

Bonnie Gestring is the Northwest Circuit Rider for Earthworks, which is a "conservation organization dedicated to protecting communities and the environment from the adverse impacts of mineral and energy development while promoting sustainable solutions." Int. Exh. 6 ¶ 2-3. As she states, "Earthworks is particularly focused on the Segregation and Proposed Withdrawal implicated by Plaintiffs' challenge in this case," and wants to "ensure that the final decision from the Interior Department protects the Greater Sage Grouse and its habitat to the maximum extent allowed by federal law." *Id.* ¶ 8, citing Complaint ¶¶ 4, 8 n.1, 59, 73, 81, 94,9 8.a, 105.

"Members of Earthworks use, enjoy, and value many of the lands that are subject to the challenged Bureau of Land Management (BLM) and Forest Service (USFS) actions in this case. These lands include BLM and USFS lands subject to the September 21, 2015 Record of Decision and Approved Resource Management Plan Amendments for the Great Basin Region, including the Greater Sage-Grouse Sub-Regions of Idaho and Southwestern Montana, Nevada and Northeastern California, Oregon, and Utah ('BLM ROD'), and the September 16, 2015 Greater Sage-grouse Record of Decision for Idaho and Southwest Montana, Nevada, and Utah issued by the U.S. Forest Service ('USFS ROD')." *Id.* ¶ 6.

Accordingly, the Conservation Groups have a keen interest in protecting sage grouse and its habitat, and in the plans themselves challenged in this case. For that reason, they meet the "interest" test.

C.  **Applicants' Interests May Be Impaired by This Litigation**

An applicant for intervention as of right must be "so situated that the disposition of the action *may* as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a) (emphasis added). Applying this impairment requirement, the Court should "'look[] to the 'practical consequences' of denying intervention….'" *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Such an inquiry "'is not limited to consequences of a strictly legal nature.'" *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir 1995) (quoting *Natural Res. Defense Council v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

Plaintiffs here challenge the plans that the Conservation Groups have sought to get enacted. Setting them aside would irreparably harm the Applicants' interests by frustrating years of effort that they have spent working to get these plans in place in order to protect sage grouse and these areas, and harm their interests in protecting sage grouse and its habitat. As stated by TWS declarant Craig Gerhke: "Invalidating or otherwise interfering with the implementation of the federal plans would maintain the risk to the greater sage-grouse that led the U.S. Fish and Wildlife Service to find that the species warranted protection under the Endangered Species Act absent changes to land use planning, and prevent conservation of habitat for hundreds of other species that rely on these same lands and leave wildlands in harm's way. The use and enjoyment of public lands by TWS members will also be at risk." Int. Exh. 1 ¶ 20. The other Conservation Groups likewise would be harmed if the plans were set aside, which would undo the work that they

have put into the plans, and expose sage grouse and the lands covered by the plans to threats that the plans protect against. Int. Exh. 2 ¶ 15-17; Int. Exh. 4 ¶ 13; Int. Exh. 6 ¶ 10.

Because applicants are so situated that the disposition of this action may, as a practical matter, impair their ability to protect their interests, applicants satisfy Rule 24(a)'s impairment-of-interest requirement.

> D. **Existing Parties Will Not Adequately Represent Applicants' Interests**

Finally, an applicant for intervention as a matter of right must show that its interests may not be adequately represented by the existing parties to the litigation. This requirement is "not onerous" and is satisfied if the applicant shows that the representation of its interests "may be" inadequate. *Fund For Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)).  Indeed, a petitioner "'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee[.]'" *Fund For Animals*, 322 F.3d at 735 (quoting *American Tel. & Tel. Co.*, 642 F.2d at 1293).  The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interest of aspiring intervenors." *Fund For Animals*, 322 F.3d at 736 (citing *Natural Res. Defense Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1989)); *see also Friends of Animals*, 452 F. Supp. 2d 64.

Here, while of course the Plaintiffs' interests are adverse, the federal defendants' interests may also be adverse to those of applicants. *See People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government's mandate to design and enforce an entire regulatory system precludes it from adequately representing one party's interest in it). While the federal government's and the Conservation Groups' interests overlap to a certain degree in this case, the government could take positions not fully protective of the sage grouse due to its duty to protect all interests, not just those of the Conservation Groups.[1] For these reasons, the Federal Government may not adequately represent the Conservations Groups' interests.

II. **ALTERNAATIVELY, APPLICANTS SATISFY THE STANDARD FOR PERMISSIVE INTERVENTION**

As detailed above, applicants meet the requirements for intervention as of right under Rule 24(a). However, if the Court denies intervention as of right, applicants request the Court for leave to intervene under Rule 24(b). Permissive intervention is appropriate when an applicant's timely claim or defense "shares a question of law or fact in common with the underlying action and if the intervention

---

[1] . In order to aid the Court by highlighting any differences between the government's and the Conservation Group's positions, and to promote judicial economy, the Conservation Groups would propose that their summary judgment briefs be due one week after the Federal Defendants' briefs, which would allow the Applicants to avoid repeated those arguments of the Federal Defendants with which they agree and believe are adequate. *See, e.g., Friends of Animals v. Ashe*, 1:15-cv-00653-ABJ (D DC), Minute Order of 7-22-15 ("[R]eply by federal defendants is due by September 25, 2015, and [] any reply by defendant-intervenors is due by October 2, 2015 and shall not repeat any arguments made in federal defendants' reply.").

will not unduly delay or prejudice the rights of the original parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 24(b)).

The Conservation Groups meet this standard, as they only seek to defend the legality of the plans challenged in this case, and so its defenses completely mesh with the underlying action. *See* Intervenor's Proposed Answer. They bring no counterclaims and their participation would not unduly delay or prejudice the rights of the original parties. For these reasons, the Conservation Groups satisfy the permissive intervention standard.

III. **THE APPLICANTS HAVE STANDING**

In this circuit, applicants in intervention must demonstrate Article III standing in addition to the intervention standards. *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998). The Conservation Groups have standing.

In order to establish standing under Article III of the Constitution, Plaintiffs must show that: (1) they have suffered an "injury in fact" due to Defendants' allegedly illegal conduct, (2) which can fairly be traced to the challenged conduct of the Defendants, and (3) which can be redressed by a favorable decision. *Defenders of Wildlife v. Gutierrez,* 532 F.3d 913, 923 (D.C. Cir. 2008*); Massachusetts v. EPA,* 549 U.S. 497, 517 (2007); *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180-81 (2000). The Court need only find standing for one plaintiff, and an organizational plaintiff must show that it or one of its members suffers injury in fact from the challenged agency action. *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 719

(1990); *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996).

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Laidlaw*, 528 U.S. at 183 (citations omitted). Actual environmental harm from complained-of activity need not be shown, as "reasonable concerns" that harm will occur are enough. *Id*.

The Conservation Groups suffer injury in fact. TWS member Craig Gerhke has detailed how he has used specific areas within Owyhee Canyonlands in Idaho for 27 years and continues to do so, with his next trip planned for March of 2016. Int. Exh. 1 ¶¶ 7, 15, 16. As he explains: "I seek out and prefer those landscapes that are undeveloped and in a natural state for hiking, photography, camping, and the enjoyment of solitude and natural quiet. I have been hiking and exploring wild areas in Idaho managed by the BLM and Forest Service for over 40 years." *Id*. ¶ 6. He explains: "The opportunity to see sage grouse in this landscape is a prime motivation to continue to visit this unspoiled landscape." *Id*. ¶ 15. He explains that the challenged plans protect sage grouse and their habitat, and that if they were set aside conservation of the sage grouse and its habitat would be threatened, causing him injury. *Id*. ¶¶ 19-20. The other declarants from the other Conservation Groups detail similar uses of public lands in Idaho that are protected by the challenged plans and which uses would be threatened if the plans were set aside. Int. Exh. 3,

*passim* (declaration of Audubon member Michele Crist); Exh. 4, *passim* (declaration of NWF member Rob Fraser); Int. Exh. 6 ¶¶ 11-12 (declaration of Earthworks member Bonnie Gestring).

These injuries are fairly traceable to the Plaintiffs' claims because setting aside the plans would make Plaintiffs' harms more likely. Plaintiffs' harms could be redressed through intervention by the Conservation Groups helping to convince the Court that the challenged plans should not be set aside. For these reasons, the Conservation Groups have standing to support their intervention.

**CONCLUSION**

For these reasons, the Conservation Groups request that the Court grant them intervention as of right or, in the alternative, permissive intervention.

Respectfully submitted this 18th day of December, 2015.

/s/Matt Kenna
Matt Kenna (D DC Bar No. CO0028)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, CO 81301
(970) 385-6941
matt@kenna.net

/s/Roger Flynn
Roger Flynn (CO Bar No. 21078),
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org
*Pro Hac Vice Application Pending*

Attorneys for Applicants in Intervention-Defendants