**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
C.L. "BUTCH" OTTER, in his official)
Capacity as Governor of the State )
of Idaho, *et al.*,                         )
                                            )
            Plaintiffs,              )
                                            )
        v.                              ) Case No. 15-cv-1566 (EGS)
                                            )
S.M.R. JEWELL, in her official      )
Capacity as Secretary of the        )
United States Department of the    )
Interior, *et al.*,                         )
                                            )
            Federal Defendants   )
                                            )
THE WILDERNESS SOCIETY, *et al.*,   )
                                            )
            Intervenor-Defendants  )
_____)


**MEMORANDUM OPINION**

     Plaintiffs Butch Otter, in his official capacity as the

Governor of Idaho, and the Idaho State Legislature, bring this

action pursuant to Section 702 of Administrative Procedure Act

("APA"), seeking review of certain final agency decisions of the

federal defendants,[1] contending that they are contrary to the

_____

[1]The federal defendants are S.M.R. Jewell, in her official
capacity, Secretary, U.S. Department of the Interior; Janice
Schneider, in her official capacity, Assistant Secretary for
Land and Minerals Management; Neil Kornze, in his official
capacity, Director of the Bureau of Land Management; U.S. Bureau
of Land Management; Thomas J. Vilsack, in his official capacity,
Secretary, U.S. Department of Agriculture; Thomas L. Tidwell, in

National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, and the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq*. *See* Compl., ECF No. 1 ¶ 10.

    Pending before the Court are the parties' motion and cross-motions for summary judgment, in which the federal defendants argue, among other things, that this Court lacks subject matter jurisdiction because plaintiffs do not have standing to bring their claims pursuant to Article III of the U.S. Constitution. Upon consideration of the motion and cross-motions, the responses and replies thereto, the applicable law, and for the reasons stated below, the Court concludes that it lacks subject matter jurisdiction over plaintiffs' claims, and therefore cannot reach the merits of those claims, because plaintiffs have failed to meet their burden of demonstrating that they have suffered an injury-in-fact as a result of the agency action.[2] Therefore, plaintiffs' motion for summary judgment is **DENIED**, federal defendants' cross-motion for summary judgment is

---

his official capacity, Chief of the U.S. Forest Service; and United States Forest Service.

[2] Even if plaintiffs had demonstrated that they have standing to bring their claims, their claims are not ripe for review substantially for the reasons articulated by the federal defendants.

**GRANTED,** and intervenor-defendants' cross-motion for summary judgment is **DENIED** as moot.[3]

## I.   BACKGROUND

This case is before this Court as related to the Court-approved agreements between environmental advocacy groups and the Fish and Wildlife Service ("FWS") in 2010 to settle multi-district litigation. *See In re ESA Section 4 Deadline Litig.*—MDL No. 2156, Misc. Action No. 10-377 (D.D.C.2010). The agreements require FWS to determine by certain deadlines whether to list a number of species as endangered or threatened under the Endangered Species Act ("ESA"), or find that listing these species is not warranted. Misc. Action No. 10-377, ECF No. 42. Relevant to the case currently before the Court, FWS was required to make a listing decision regarding the Sage-Grouse by September 30, 2015. Misc. Action No. 10-377, ECF No. 56.

In anticipation of the need to make that decision, the Bureau of Land Management ("BLM") and the Forest Service "undertook a land use planning effort of unprecedented scope [that] was designed to amend or revise the existing regulatory

---

[3]Intervenor-defendants Wilderness Society, National Audubon Society, National Wildlife Federation, and Earthworks did not challenge plaintiffs' Article III Standing, nor did Amicus Owyhee County, Idaho; Public Lands Council; and National Cattlemen's Beef Association address standing. Therefore, the Court does not reach the arguments on the merits made by those parties.

mechanisms—federal land use plans—to provide enforceable
conservation measures and management objectives to protect and
improve Sage-Grouse habitat." Federal Defs.' Combined Mem. in
Supp. of Cross-Mot. for Summ. J., ECF No. 56 at 16-17. The
planning effort, which involved federal land in ten western
states, spanned four years and included the participation of
members of the public and numerous state and federal entities,
including the State of Idaho. *Id.* at 17; Mem. in Supp. of Mot.
for Prelim. Inj., ECF No. 15-1 at 17-18. Idaho's participation
included, among other things, the submission of one of the
alternative plans for consideration by BLM and the Forest
Service. Federal Defs.' Combined Mem. in Supp. of Cross-Mot. for
Summ. J., ECF No. 56 at 19; Mem. in Supp. of Mot. for Prelim.
Inj., ECF No. 15-1 at 18-19, 21-22. That plan was not adopted as
the final agency decision although federal defendants state that
several aspects of the Idaho plan were included in the final
agency decision. Federal Defs.' Combined Mem. in Supp. of Cross-
Mot. for Summ. J., ECF No. 56 at 25. Plaintiffs ask this Court
to set aside, vacate, and remand the final decision,
specifically the land use plan amendment and supporting
Environmental Impact Statement ("EIS") for the Idaho and

Southwestern Montana sub-region ("IDMT Plan" or "plan"),[4] as contrary to law.

## II.   Standard of Review

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review, which requires a reviewing court to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *UPMC v. Sebelius*, 793 F.Supp.2d 62, 67 (D.D.C.2011). Due to the limited role of a court in reviewing the administrative record, the typical summary judgment standards set forth in Rule 56(c) are not applicable. *Stuttering Found. of America v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C.2007)(internal citation omitted). Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir.1985)). A reviewing court will "hold

---

[4] Plaintiffs refer to the final agency decision at issue as the Idaho Land Use Planning Amendments ("Idaho LUPA").

unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Ludlow v. Mabus*, 793 F.Supp.2d 352, 354 (D.D.C.2001) (quoting 5 U.S.C. § 706(2)(A)).

### III. Analysis

#### A. Standing

"Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting U.S. Const., art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The standing requirement "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury-in-fact requirement is only satisfied when an injury is "'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).

"The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561 (internal citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "In response to a summary judgment motion . . . the plaintiff . . . must set forth by affidavit or other evidence specific facts, Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." Id. (internal quotation marks omitted). "[A]t summary judgment a court will not 'presume' the missing facts necessary to establish an element of standing." *Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C.Cir.2015) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)).

Although "states are 'entitled to special solicitude in our standing analysis' . . . . [they are not] exempt from the burden of establishing a concrete and particularized injury in fact." *Coal. for Responsible Regulation Inc. v. EPA*, 684 F.3d 102, 148 (D.C.Cir.2012)(quoting *Massachusetts v. E.P.A.,* 549 U.S. 497,

522 (2007)); *see also State of West Virginia v. U.S. Department of Health and Human Services,* 145 F.Supp.3d 94, 101 (2015)(reasoning that states "too must allege a cognizable injury-in-fact to establish standing").

Here, federal defendants dispute that plaintiffs have satisfied the injury-in-fact requirement necessary to demonstrate standing. The Court agrees.

> **1. Plaintiffs have failed to demonstrate that they have suffered an injury-in-fact as a result of the binding standards and self-implementing aspects of the IDMT Plan**

In support of their argument that they have standing to bring their claims, plaintiffs state that the purpose of the IDMT Plan was to make mandatory, binding changes to land use, and that as a result of these changes, certain "immediate decisions" went into effect upon its adoption. Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 13. These "immediate decisions" include "allocation of lands as open or closed for salable mineral sales, lands open with stipulations for oil and gas leasing, and OHV [Off Highway Vehicle] area designations." *Id.* Plaintiffs then assert that because deviating from the standards set forth in the IDMT Plan would require a site-specific forest plan amendment, "there is no legal ability to change challenged standards in the interim between the pendency of this action and when a later, site-specific activity

is undertaken." *Id.* Plaintiffs conclude that they are challenging binding standards for third-party activity and assert that federal defendants cannot contend that the plan is merely a planning level document because of the self-implementing aspects of the plan. *Id.* at 14.

Federal defendants reply that they do not dispute that the plan is intended to be implemented in the future, nor that it contains binding standards. Federal Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 62 at 8. That said, federal defendants assert that until there is a specific implementation decision, there is no injury to plaintiffs' claimed interests. *Id.* at 9; Federal Defs.' Combined Mem. in Supp. of Cross-Mot. for Summ. J., ECF No. 56 at 37 (citing *Fed. Forest Res. Coal. v. Vilsack,* 100 F.Supp.3d at 46 for the proposition that "plaintiff lacks standing when challenged rule or plan does not implement site-specific decision").[5] Federal defendants dispute that any of the "immediate decisions" provide a basis for a cognizable injury-in-fact, pointing out that plaintiffs "merely speculate that those immediate decisions will somehow affect revenues owed

---

[5] Plaintiffs distinguish *Fed. Forest Res. Coal. v. Vilsack,* 100 F.Supp.3d. 121 (D.D.C.2015) from the circumstances in this case because the binding standards in the IDMF Plan are distinct from the 'amalgamation of first principles' at issue in *Fed. Forest Res. Coal.* Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 13. However, it is not necessary for the Court to address this issue because plaintiffs have failed to provide any facts in support of their injury-in-fact.

to the State." *Id*. at 9-10. In sum, according to federal defendants, "[p]laintiffs' allegations of harm flowing from the certainty of the plans are unsupported by facts, speculative and conclusory." *Id*.

Plaintiffs bear the burden of demonstrating that they "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (internal quotations omitted). At the summary judgment stage, plaintiffs must "set forth by affidavit or other evidence specific facts" supporting the alleged injury-in-fact. *Id*.(internal quotations omitted). Based on the record before the Court, plaintiffs have failed to meet this burden because they set forth no facts at all to support their argument that the binding standards and self-implementing aspects of the plan have caused them injuries. *See* Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 13-14. Plaintiffs' citations to the Administrative Record support their point that the plan contains binding standards. *Id*. at 14. Plaintiffs do not, however, set forth any specific facts to demonstrate an injury-in-fact as a result of the binding standards and self-implementing aspects of the IDMT Plan.

**2. Plaintiffs have failed to demonstrate that they have suffered an injury-in-fact to Governor Otter's ability to carry out his constitutional responsibilities**

Next, plaintiffs argue that the mandatory standards set forth in the plan "directly impede, impair and injure Governor Otter's ability to carry out his constitutional responsibilities as chief executive of Idaho, which is a cognizable injury-in-fact." Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 14-15. Plaintiffs assert that because of the interest states have as sovereigns in creating and enforcing a legal code, they "may have standing based on (1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law, at least where the state statute at issue regulate[s] behavior or provide[s] for the administration of a state program." Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 15 (quoting *Texas v. United States*, 809 F.3d 134, 153 (5th Cir.2015), *as revised* (Nov. 25, 2015), *aff'd by an equally divided Court*, 136 S.Ct. 2271, 2272 (2016)). Plaintiffs argue that "[i]njury to Idaho's sovereign authority over wildlife management" is a cognizable injury-in-fact because, pursuant to Idaho Code § 36-103, the wild animals within the borders of the state are owned by the state in its sovereign capacity. Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 14-15.

11

Federal defendants acknowledge that "[s]tates can have standing to challenge federal actions that allegedly infringe on state sovereignty or police powers in certain circumstances, such as where federal law impairs the enforceability of an existing state law or directly regulates a state officer's official duties." Federal Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 62 at 11 (citing *Arpaio v. Obama*, 27 F.Supp.3d, 185, 201-02 (D.D.C. 2014)). Those circumstances are not present here, according to federal defendants, because at issue is "a federal land use plan, promulgated pursuant to valid delegations of federal power vested in the federal government by the Constitution, which applies only to federal property and will be implemented by federal officials." *Id*. at 11-12. Federal defendants agree that the State of Idaho has police powers over the wildlife on state lands, noting that the IDMT Plan neither regulates Sage-Grouse nor infringes on the State's authority to manage wildlife on its own land.[6] *Id*. at 13.

The Court finds plaintiffs' legal support for standing based on injury to state sovereignty to be unpersuasive. In *Texas v. United States*, which constitutes persuasive authority

---

[6] The Court agrees with federal defendants' observation that the cases cited by plaintiffs which stand for the proposition that States have police powers over the wildlife within their borders do not provide legal support for their theory of standing based on state sovereignty.

for this Court, the Court of Appeals for the Fifth Circuit found
that the State of Texas had standing to sue because it had
demonstrated that it "would incur significant costs in issuing
driver's licenses to DAPA [Deferred Action for Parents of
Americans and Lawful Permanent Residents] beneficiaries." 809
F.3d at 155. This circumstance, which concerns the financial
impact of federal action on a program wholly within the purview
of state law—specifically the issuance of state driver's
licenses—is clearly distinguishable from the circumstance in
this case, which, as explained by federal defendants, concerns
"a federal land use plan, promulgated pursuant to valid
delegations of federal power vested in the federal government by
the Constitution, which applies only to federal property and
will be implemented by federal officials." Federal Defs.' Reply
in Supp. of Cross-Mot. for Summ. J., ECF No. 62 at 11-12. Nor
does plaintiffs' reliance on *Alaska v. U.S. Dep't of Transp*.,
868 F.3d 441, 443 (D.C.Cir.1989) help their cause as the injury
alleged in that case was federal preemption of state law, which
has not been alleged in this case.

In *Arpaio,* Chief Judge Howell of this Court rejected a
county sheriff's standing to sue in his official capacity based
on a theory similar to the "spill-over" effect theory advanced
by Governor Otter and the Idaho State Legislature here. *See
infra* Section III.A.3. Sheriff Arpaio alleged that federal

immigration policies "inhibit[ed] his ability to perform his
official functions as the Sheriff of Maricopa County" and
"adversely affected and harmed his office's finances, workload,
and interfere[d] with the conduct of his duties." 27 F.Supp.3d
at 200. The Court acknowledged that if federal law directly
regulated a state officer's official duties it would present a
question distinct from that before the Court: "the challenged
[federal] programs do not regulate the official conduct of the
plaintiff but merely regulate the conduct of federal immigration
officials in the exercise of their official duties." *Id*. at 202.
This is analogous to the circumstance in this case, which again
concerns "a federal land use plan . . . which applies only to
federal property and will be implemented by federal officials."
Federal Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF
No. 62 at 11-12.

Even if there was legal precedent for plaintiffs' theory of
injury to state sovereignty, based on the record before the
Court, plaintiffs have failed to meet their burden of
demonstrating that they "suffered an injury in fact—an invasion
of a legally protected interest which is (a) concrete and
particularized, and (b) actual or imminent, not conjectural or
hypothetical . . . set forth by affidavit or other evidence
specific facts" supporting the alleged injury-in-fact. *Lujan*,
504 U.S. at 561 (internal quotations omitted). The three

declarations plaintiffs cite to demonstrate injury-in-fact to
Governor Otter's ability to carry out his constitutional
responsibilities merely speculate about various injuries that
may result from the implementation of the IDMT Plan. None
provide factual support demonstrating any concrete and
particularized, and actual or imminent injury as a result of the
IDMT Plan. *See* Otter Decl., ECF No. 17, ¶¶ 6, 12-47, 48-54
(alleging generalized injuries to Governor's and State's ability
to execute constitutional duties); Moore Decl., ECF No. 22, ¶¶
23-25 (describing how certain changes to the IDMT Plan were not
justified and were made without soliciting or considering
Idaho's comments); Schultz Decl. ECF No. 19, ¶¶ 5-7, 9
(estimating losses to state revenue resulting from non-surface
occupancy restrictions and listing general impacts that "may"
result from the IDMT Plan).

> **3. Plaintiffs have failed to demonstrate that they have
> suffered an injury-in-fact as a result of "spillover"
> effects of the IDMT Plan on state and privately owned
> lands**

Next, plaintiffs argue that their injury includes: (1) the
"spillover effects of federal management onto surrounding state-
and privately- owned lands" which are "intermixed in a checker-
board pattern" and across which Sage-Grouse freely range; (2)
lost state revenue from bonuses and royalties from oil and gas
production on federal land as a result of the no surface

occupancy (NSO) restrictions in the [Sagebrush Focal Areas]" and (3) an increase in the risk of wildfires on federal land, which will spread to adjacent state land. Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 17.

Federal defendants respond that plaintiffs' allegations are are conclusory and lack factual support and that none of the "spillover effects" demonstrate an injury-in-fact. Federal Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 62 at 14.

Again, however, plaintiffs have failed to meet their burden of demonstrating that they "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical . . . set forth by affidavit or other evidence specific facts" supporting the alleged injury-in-fact. *Lujan*, 504 U.S. at 561 (internal quotations omitted). The five declarations plaintiffs cite to demonstrate injury-in-fact as a result of spill-over effects of the IDMT Plan fail to provide factual support demonstrating any concrete and particularized, and actual or imminent injury. *See* Schultz Decl. ECF No. 19, ¶¶ 5-7, 9 (estimating losses to state revenue resulting from non-surface occupancy restrictions and listing general impacts that "may" result from the IDMT Plan); Chatburn Decl., ECF No. 20, ¶¶ 18-20 (declaring that the China Mountain wind energy project was

"effectively jettisoned" when work on the Environmental Impact Statement for that project was deferred until the IDMT Plan process was finalized and that the IDMT Plan "continue[s] the federal government's pattern, to date, of refusing to permit or significantly delaying the development of utility scale, renewable energy projects . . . [and also] undermin[ing] the necessity of predictability in Western energy siting processes);[7] Brackett Decl., ECF No. 24, ¶ 9 (declaring that the IDMT Plan will result in an exacerbated wildfire risk); Bedke Decl., ECF No. 21, ¶¶ 6-7, 13 (declaring that the threat of wildfires will be exacerbated and that the State's sovereign authority to manage wildlife within its borders is undermined by the IDMT Plan); Gould Decl., ECF No. 23, ¶¶ 10-11, 16-17(declaring a potentially dramatic impact on Idaho's livestock industries and local economies, expecting value of state leases to be impacted, describing expected impacts on members of Idaho's livestock industry who utilize public grazing allotments).[8]

---

[7]Moreover, the Court notes that the decision to defer work on the EIS for the China Mountain wind energy project was a separate agency decision that is not being challenged in this case.
[8] The Court agrees with federal defendants that plaintiffs' fourth argument—that "agency actions are not immune to judicial review simply because they are labelled 'plans'", see Pls.' Combined Reply in Supp. of Mot. for Summ. J., ECF No. 58 at 17, is more relevant to ripeness than standing. Clearly, the IDMT Plan is **not** immune to judicial review as long as the plaintiff can demonstrate: "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed

## IV.   CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is **DENIED**, federal defendants' cross-motion for summary judgment is **GRANTED,** and intervenor-defendants' cross-motion for summary judgment is **DENIED** as moot. An appropriate order accompanies this Memorandum Opinion.

**Signed:      Emmet G. Sullivan**
**             United States District Judge**
**             January 5, 2017**

---

by a favorable decision.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As explained above, plaintiffs here have failed to demonstrate that they have suffered an injury-in-fact as a result of the adoption of the plan.